## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

DON GARFIELD GALLOWAY,

      Petitioner,

v.                                   Case No. 5:17-cv-00993

DONNIE AMES, Superintendent,
Mount Olive Correctional Complex,

      Respondent.

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Frank W. Volk, United States District Judge and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. 636(b)(1)(B).  Pending before the court is Respondent's Motion to Dismiss and Motion for Summary Judgment (ECF No. 31).

*I.*     *RELEVANT PROCEDURAL HISTORY*

**A.**    **Petitioner's state court criminal proceedings.**

On July 15, 2008, Petitioner was indicted by a Summers County grand jury on two counts of possession with intent to deliver a controlled substance (Counts One and Two); one count of intimidation of and retaliation against public officers (Count Three); three counts of battery on a police officer (Counts Four, Five, and Six); and one count of obstructing an officer (Count Seven). *State v. Galloway*, No. 08-F-35. (ECF No. 7, Ex. 1).  The charges stemmed from a search of Petitioner's residence at 140 Railroad Avenue, in Hinton, West Virginia, on March 1, 2008, pursuant to a search warrant, and the seizure

of controlled substances and money found in the residence during the search.  The search warrant was issued by Summers County Magistrate J.W. Jeffries, upon an Affidavit executed by Summers County Deputy Sherriff James Chellis ("Chellis"), who contended that his office had received several anonymous calls concerning an alleged large shipment of drugs to the property and had allegedly conducted prior surveillance of the property, which supposedly had a reputation for "high drug activity."  (ECF No. 27 at 96).

Following his arrest, Petitioner, by counsel, Jason D. Parmer, filed a Motion to Suppress Seized Evidence.  On January 30, 2009, the Circuit Court of Summers County held a hearing on Petitioner's motion, during which Chellis testified.  (*Id.*, Ex. 2).  Following the hearing, the Circuit Court found that the State had established probable cause for the search warrant and that the seized evidence was admissible.  Thus, the court denied Petitioner's Motion to Suppress on February 5, 2009.  (*Id.*)

Subsequently, Petitioner obtained new counsel, Jason Grubb, who determined not to revisit the suppression motion, choosing instead to attack the inconsistencies in the evidence concerning the search warrant as a matter of trial strategy.  Petitioner was tried by a jury on February 4 and 5, 2010, and was found guilty on Count Two of the indictment charging him with possession with intent to deliver a controlled substance (Xanax) and not guilty on all other charges.  (*Id.*, Ex. 3).  On February 18, 2010, the State filed a recidivist information, pursuant to W. Va. Code § 61-11-19, alleging that Petitioner was the same person who had previously been convicted of three felony offenses – a 2004 voluntary manslaughter, a 2000 possession with intent to deliver a controlled substance, and a 1994 sexual assault in the third degree – and seeking to have him sentenced to life imprisonment.  (*Id.*, Ex. 4).  Petitioner's recidivist trial was conducted on February 23, 2010, and the jury found that he was the same person who had been convicted of the three

felonies as described in the information. (*Id.*, Ex. 5). Accordingly, on February 24, 2010, the Circuit Court sentenced Petitioner to life in prison. (*Id.*)

### B. Petitioner's direct appeal.

Petitioner appealed to the Supreme Court of Appeals of West Virginia (the "SCAWV") asserting a single ground for relief concerning the legality of the search of his residence that led to the discovery of the controlled substances that formed the basis of his conviction. He contended that:

> Deputy Chellis did not present sufficient evidence within the affidavit or the search warrant itself to establish probable cause. Therefore, the search of Mr. Galloway's home was illegal and all the evidence seized during the search must be suppressed. The search violated the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution.

(*Id.*, Ex. 6 at 12). The Petition for Appeal included four arguments in support of this claim:

> a. Deputy Chellis failed to include any information within the four corners of the warrant or the affidavit in support of the warrant to demonstrate the anonymous callers' veracity, reliability, or the basis of their knowledge regarding the shipment of drugs that was supposedly at 140 Railroad Ave, as is *required* by law. Therefore, the issuance of the warrant by the magistrate was improper. The trial court erred when it upheld the validity of the warrant in this case.
>
> b. The State conceded in its response to defense counsel's Bill of Particulars that no attempts were made to corroborate the representations of the anonymous callers. Therefore, according to this Court's precedent, the warrant to search Mr. Galloway's home was invalid and all of the evidence recovered during that search must be suppressed.
>
> c. The circuit court erred in considering testimony concerning information not contained in the search warrant affidavit, over trial counsel's objection, to improperly bolster the sufficiency of the affidavit which in this case was bare bones and did not support the magistrate's finding of probable cause. Therefore, the search of Mr. Galloway's home was illegal and his conviction must be reversed as it was based solely on evidence recovered during the illegal search.

> d. Deputy Chellis, a trained officer of the law for approximately two and a half years at the time of his request for the search warrant, knew or should have known that the information supplied to the magistrate did not constitute probable cause to search Mr. Galloway's home. The information was also provided in a reckless disregard for the truth. This reckless presentment of facts was successful because the magistrate failed to properly examine for the presence of probable cause in a neutral and detached manner. Deputy Chellis did not have reasonable grounds to believe the warrant was properly issued and as a result all evidence recovered during the search of Mr. Galloway's home should be suppressed.

(*Id.* at 2). The State filed a responsive brief on January 11, 2011. (*Id.*, Ex. 7).

On March 11, 2011, the SCAWV issued a Memorandum Decision affirming the judgment of the Circuit Court and finding "no clear error in the circuit court's denial of the motion to suppress." *State v. Galloway*, No. 101185 (W. Va. Mar. 11, 2011). (*Id.*, Ex. 8). The Supreme Court of the United States denied Petitioner's petition for a writ of certiorari on October 3, 2011, and his judgment became final on that date. *Galloway v. West Virginia*, 565 U.S. 914 (2011). (*Id.*, Ex. 9).

## C.    Petitioner's initial state court habeas corpus proceedings

On December 23, 2011, Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus in the Circuit Court of Summers County. *Galloway v. Berlin,* No. 12-C-1. (*Id.*, Ex. 10). The *pro se* petition raised the following grounds for relief:

> 1. Trial court's order [from 1-30-09 Suppression Hearing] is incorrect. Deputy Chellis testified falsely.
>
> 2. Denial of my Due Process Rights. My right to preliminary full and fair hearings concerning charges brought against me (Xanax charge).
>
> 3. Prosecution misconduct/malicious prosecution.
>
> 4. Ineffective assistance of counsel (Jason Parmer) from 03-08 to 06-09.
>
> 5. Ineffective assistance of counsel (Jason Grubb) 10-09 until 02-10.

6.      2004 involuntary manslaughter no-contest conviction illegally used against me for enhancement purposes.

7.      Deputy Chellis was allowed to testify falsely and withhold evidence helpful to defense.

8.      Jury misconduct (Andy Ward) 2-4-10 Trial.

9.      The search violated my Fourth Amendment rights.  Mere suspicion alone is not enough to warrant search warrant.

(*Id.*)

On May 1, 2014, Petitioner, by court-appointed counsel, Paul Cassell, filed an Amended Petition.  (*Id.*, Ex. 12).  The Amended Petition asserted the following grounds for relief:

A.      Petitioner's state and federal constitutional rights were violated by the ineffective assistance of trial counsel.

    1.      Trial counsel was ineffective in failing to properly investigate and undermine the inadequate search warrant.

    2.      Trial counsel was ineffective in failing to properly address the Xanax charge.

    3.      Trial counsel was ineffective and petitioner's due process rights were violated with regard to juror Ward.

    4.      Trial counsel was ineffective in preventing the prosecutor from shifting burden of proof during cross-examination.

    5.      Counsel was ineffective in explaining the effect of the state's promise not to enhance the 2004 voluntary manslaughter case.

B.      Petitioner's federal and state constitutional rights were violated by his disproportionate sentence.

C.      Petitioner's federal and state constitutional rights were violated by the effects of cumulative error.

> D.    Petitioner also asserts all additional grounds raised in his *pro se* petition and the *Losh*[1] checklist filed herewith.

(*Id.*)  Petitioner also filed a Memorandum of Law in support of his Amended Petition. (*Id.*)

On August 14, 2015, the Circuit Court of Summers County conducted an omnibus hearing on Petitioner's Amended Petition.  (ECF No. 31, Ex. 5).  By Order entered on September 18, 2015, the Circuit Court denied Petitioner's Amended Petition.  (ECF No. 7, Ex. 13).

**D.    Petitioner's first state habeas appeal.**

Petitioner, by counsel, appealed to the SCAWV, asserting the following grounds for relief:

> 1.    The trial court erred in failing to provide relief pursuant to Petitioner's claim that his state and federal constitutional rights were violated by the ineffective assistance of trial counsel.
>
>> a.    The trial court should have granted relief because trial counsel failed to adequately investigate and challenge an illegal search warrant.
>>
>> b.    The trial court should have granted relief because trial counsel failed to properly investigate and defend the charge on which Petitioner was ultimately convicted.
>>
>> c.    The trial court should have granted relief because trial counsel failed to adequately protect Petitioner's rights regarding a biased juror.
>>
>> d.    The trial court should have granted relief because trial counsel failed to prevent the prosecutor from improperly shifting the burden of proof.

---

[1] *See Losh v. McKenzie*, 277 S.E.2d 606 (W. Va. 1981), in which the SCAWV held that an omnibus hearing under W. Va. Code § 53-4A-1 is *res judicata* as to all matters raised therein, or those claims which should have, with reasonable diligence, been known to the petitioner.  The failure to raise claims under those circumstances may constitute a knowing and intelligent waiver of such claims and bar them from consideration in future proceedings.

> e.    The trial court should have granted relief because of trial counsel's inadequate advice regarding the Habitual Criminal Act.
>
> f.    The trial court should have granted relief because of trial counsel's failure to fully litigate and appeal the trial court's denial of a severance.

> 2.    The trial court erred in failing to provide relief pursuant to Petitioner's claim that his federal and state constitutional rights were violated by his disproportionate sentence.

> 3.    The trial court erred in failing to provide relief pursuant to Petitioner's claim that his state and federal constitutional rights were violated by the effects of cumulative error.

(ECF No. 7, Ex. 14).  Following full briefing, the SCAWV affirmed the judgment of the Circuit Court and adopted and incorporated the Circuit Court's analysis in a Memorandum Decision issued on September 19, 2016. *Galloway v. Ballard*, No. 15-1005, 2016 WL 5210850 (W. Va. Sept. 19, 2016).  (ECF No. 7, Ex. 17).

### E.    Petitioner's initial section 2254 petition

On January 27, 2017, Petitioner filed his initial section 2254 petition raising the following grounds for relief:

> 1.    Ineffective assistance of counsel.  The failure of Petitioner's trial [counsel's] representation was woefully inadequate and created severe prejudice to Petitioner in several ways.  Failure to preserve constitutional issues for direct appeal, failure to seek relief in pre-trial and post-trial motions.  Mr. Grubb's failure to have a juror removed and his failure to renew a motion to suppress is expressly contemplated by the rules of criminal procedure when [new] evidence comes to light at trial as what happened at Petitioner's trial when Deputy James Chellis changed his testimony from making controlled drug buys and arrests at Petitioner's home to never making controlled drug buys and drug arrests is a major failure against Petitioner's attorney.

> A.    Trial counsel failed to adequately investigate and challenge an illegal search warrant.

   B. Trial counsel failed to adequately protect Petitioner's rights regarding a biased juror.

 2. State's knowing use of perjured testimony.

 3. Prosecution Misconduct.

 4. Cumulative error.

 5. Violation of my Fourth Amendment.

(*Id.*)

Additionally, Petitioner's Memorandum in Support of § 2254 Petition raised a new claim of ineffective assistance of appellate counsel concerning the failure of his appellate counsel, Crystal L. Walden, to provide the SCAWV with a complete record because the Order denying his motion to suppress was allegedly missing two pages. (ECF No. 1-1 at 59). Petitioner further asserts that this denied him due process of law under the Fourth and Fourteenth Amendments. (*Id.*)

On March 30, 2018, Respondent filed a Motion to Dismiss Without Prejudice for Failure to Exhaust State Court Remedies. (ECF No. 7). Alternatively, Respondent proposed a stay of the matter to permit Petitioner to return to state court to attempt to exhaust his unexhausted claims or permitting Petitioner to proceed only on the exhausted claims in his petition. Thereafter, Petitioner filed a Motion for Stay and Abeyance. (ECF No. 10). By Memorandum Opinion dated January 3, 2019 (ECF No. 14), the presiding District Judge adopted the undersigned's initial Proposed Findings and Recommendation (ECF No. 13), finding that Petitioner had filed a mixed petition and granting a stay and abeyance to allow Petitioner to return to state court to attempt to exhaust his state court remedies.

**F.      Petitioner's second state habeas corpus petition**

On July 3, 2018, Petitioner filed a second pro se petition for habeas corpus in the Circuit Court of Summers County. (Ex. 1).  The second petition alleged claims of ineffective assistance of habeas counsel, Paul Cassell; ineffective assistance of trial counsel, Jason Parmer; ineffective assistance of appellate counsel, Crystal Walden; prosecutorial misconduct regarding the actions of Assistant Prosecutor Amy Mann and Assistant Attorney General Michele Duncan Bishop; that the State knowingly used perjured testimony; and that Petitioner was denied due process of law in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution. (ECF No. 31, Ex. 1 at 4-11).  With respect to his claim that his appellate counsel was ineffective, Petitioner alleged that her failure to include two pages of the Court's four-page order denying his motion to suppress evidence deprived him of "a full and fair review of his appeal by the highest court in the state." (*Id*. at 6).  Petitioner further claimed that Mann's preparation of Deputy Chellis for his testimony, which Petitioner claims was false, amounted to prosecutorial misconduct.  (*Id*. at 3-6, 8-11).  As to the alleged misconduct of Bishop, Petitioner alleged only that he believes "the evidence exists in this case that both prosecutor's [sic] Ms. Mann and Ms. Bishop abandoned their role as officer of the court." (*Id*. at 3-6, 8-11).  Petitioner's claim that the State knowingly used perjured testimony stems from the same allegation that Chellis lied in his search warrant affidavit and in his testimony thereafter, and that Mann "knew, allowed, and [e]ncouraged" Chellis "to testify falsely." (*Id*. at 10).

On July 10, 2018, the Summers County Circuit Court entered an order denying Petitioner's second petition for post-conviction habeas corpus relief.  (ECF No. 31, Ex. 2). Citing to *Strickland* and its progeny, the circuit court found that Petitioner's habeas

counsel was not ineffective.  (*Id.* at 5-7).  The circuit court further noted that Petitioner's remaining claims "stem from assertions relating to the suppression hearing concerning the aforementioned warrant and affidavit," and explained that those grounds "have already been adjudicated in prior Orders of this Court and the Supreme Court of Appeals of West Virginia."  (*Id.* at 7-8).  The circuit court further stated that "[b]ecause the remainder of the Petitioner's grounds were previously addressed, or at the very least should have been known but were not raised, these contentions are without merit[.]" (*Id.*)  Consequently, the court denied those claims based upon *res judicata*.  (*Id.*)

### G.    Petitioner's second state habeas appeal.

Petitioner appealed the denial of his second state habeas petition to the SCAWV.  (ECF No. 31, Ex. 3).  On November 15, 2019, the SCAWV issued a Memorandum Opinion affirming the denial of the second habeas petition.  *Galloway v. Ames*, No. 18-688, 2019 WL 6048283 (W. Va., Nov. 15, 2019).  The SCAWV upheld the circuit court's findings that issues other than ineffective assistance of habeas counsel were previously and finally adjudicated and/or waived and the denial of his ineffective assistance of habeas counsel claims on their merits.  *Id.* at *4-*5.

### H.    Petitioner's amended § 2254 petition.

The stay of this matter was subsequently lifted, and Petitioner filed his instant Amended Petition on March 2, 2023.  (ECF No. 27).  In his Amended Petition, Petitioner again raised his claims of ineffective assistance of trial counsel, disproportionate sentence, and cumulative error and added a new claim of ineffective assistance of habeas counsel.  (ECF 27 at 16-31).  From a review of the Amended Petition and Petitioner's Response to Respondent's Motion to Dismiss and Motion for Summary Judgment (ECF No. 34 at 8), it appears that Petitioner is abandoning his claims of ineffective assistance

of appellate counsel, prosecutorial misconduct, and knowing use of perjured testimony. The amended petition supersedes the original petition and any claims not raised therein are considered abandoned.  Thus, the claims that will be addressed by the Court herein are as follows:

1.      Ineffective assistance of trial counsel.

    (a)      Failure to adequately investigate and challenge an illegal search warrant.

    (b)      Failure to properly investigate and defend the charge on which Petitioner was ultimately convicted.

    (c)      Failure to adequately protect Petitioner's rights regarding a biased juror.

    (d)      Failure to prevent the prosecutor from improperly shifting the burden of proof.

    (e)      Provided inadequate advice regarding the Habitual Criminal Act.

    (f)      Failure to fully litigate the trial court's denial of a severance.

2.      Ineffective assistance of habeas counsel.

    (a)      Failure to adequately investigate and undermine the inadequate search warrant.

    (b)      Failure to discover missing record.

3.      Petitioner's constitutional rights were violated by his disproportionate sentence.

4.      Petitioner's constitutional rights were violated by the effects of cumulative error.

(ECF No. 27 at 16-31).

       On May 10, 2023, in accordance with the undersigned's orders, Respondent filed the instant Motion to Dismiss and Motion for Summary Judgment. (ECF No. 32).  On May 11, 2023, the undersigned entered an Order and Notice, in accordance with the

requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his right and obligation to respond to Respondent's motion. (ECF No. 33). On June 8, 2023, Petitioner filed his Response in opposition to Respondent's motion. (ECF No. 34). Respondent did not file a reply brief. This matter is ripe for resolution.

II.    *STANDARDS OF REVIEW*

**A.    Standards for relief under 28 U.S.C. § 2254(d).**

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle

from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Where a claim has been summarily refused, the undersigned must simply determine whether that decision was legally and factually reasonable under clearly established federal law. *See Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000) (When a state court summarily rejects a claim without setting forth its reasoning, the federal court reviews the record and the clearly-established Supreme Court law, but still "confine[s] [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'").

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings. *See*, *e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991). Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

### B.     Exhaustion requirement under 28 U.S.C. § 2254(b).

Section 2254(b)(1)(A) of Title 28 of the United States Code, states that a petition for a writ of habeas corpus filed in a federal district court by a prisoner in state custody shall not be granted, unless it appears that the applicant has exhausted the remedies available in the state courts, or if the state has waived the exhaustion requirement.  28 U.S.C. §§ 2254(b)(1)(A), (b)(3).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Beard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (Exhaustion requires the habeas petitioner to "fairly present the substance of his claim to the state's highest court.")

In West Virginia, prisoners may exhaust their available state court remedies either by stating cognizable federal constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the SCAWV.  *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D.W. Va. 1995); *McDaniel v. Holland*, 631 F. Supp. 1544, 1545 (S.D.W. Va. 1986).  A petition for a writ of habeas corpus filed under the original jurisdiction of the SCAWV that is denied with prejudice following a determination on the merits will also exhaust the prisoner's state court remedies.  *See Moore*, 879 F. Supp. at 593; *McDaniel*, 631 F. Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-909 (4th Cir. 1990) (*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87 (1997)).

Additionally, Petitioner must show that the claims he raised in state proceedings are the same as the claims he now seeks to raise in his federal habeas proceeding.  *See*

*Pitchess v. Davis*, 421 U.S. 482, 487 (1975); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The claims in both courts must "fairly present" the "substance" of the claim, based upon the same factual grounds, and must allege that the same federal constitutional right was violated. *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

### C. Procedural default doctrine.

The doctrine of procedural default bars litigation of claims in a federal habeas corpus petition that were not adjudicated on their merits in state court where such claims are barred from further litigation in state court by operation of a state procedural rule. *See Boothe v. Ballard*, No. 2:14-cv-25165, 2016 WL 1275054 *46 (S.D. W. Va. Mar. 31, 2016), *aff'd*, 670 F. App'x 193 (4th Cir., Nov. 18, 2016). "The procedural default doctrine operates to bar a federal habeas claim 'only if the rule of procedure . . . is determined to be an adequate and independent state-law ground for decision.'" *Id.* at *47 (quoting *Thomas v. Davis*, 192 F.3d 445, 450 (4th Cir. 1999); *see also Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds.").

However, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *cf. Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) ("Although the doctrine of procedural default limits federal habeas review of state convictions, it does not provide an absolute bar."). In fact, the procedural default doctrine provides for two exceptions where a petitioner can show: (1) cause for the default and prejudice therefrom; or (2) that failure to consider the claims

will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Richmond v. Polk*, 375 F.3d 309, 323 (4th Cir. 2004).

"Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the procedural rule. *Maples, supra*, 565 U.S. at 280. The Supreme Court has not "identified with precision exactly what constitutes 'cause' to excuse procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Generally, ineffective assistance of habeas counsel is not considered an external factor that would excuse the failure to exhaust a claim for habeas corpus relief. *See Maples*, 565 U.S. at 280 ("Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'") (citing *Coleman*, 501 U.S. at 753); *but see Martinez*, 566 U.S. at 9-10 (finding "cause" based upon counsel's failure to raise claims of ineffective assistance of trial counsel in initial habeas proceeding).

Respondent cites to *Boothe, supra*, which summarized the procedural default doctrine as follows:

> The procedural default doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). In addition, "[i]f claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts." *Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 735 n.1). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citations omitted). "The procedural default doctrine . . . appl[ies] . . . whether the default in question occurred at trial, on appeal, or on state collateral attack." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted).

2016 WL 1275054 at *46.

### III.    DISCUSSION

### A.    Ineffective assistance of counsel claims.

In Ground One of his Amended Petition, Petitioner contends that his trial counsel provided ineffective assistance of counsel in various ways.  In *Strickland v. Washington*, 466 U.S. 688 (1984), the Supreme Court adopted a two-prong test for determining whether a criminal defendant received adequate assistance of counsel.   A defendant/petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-91.  Moreover, "judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  The burden to prove ineffective assistance of counsel under § 2254 is "even steeper."  *Crockett v. Clarke*, 35 F.4th 231, 242 (4th Cir.), *cert. denied*, 143 S. Ct. 330, 214 L. Ed. 2d 147 (2022).  Thus, AEDPA "adds a layer of respect for a state court's application of the legal standard."  *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, 466 U.S. at 689, and the burden is on the petitioner to show prejudice.  *Hutchins v. Garrison*, 724 F.2d 1425 (4th Cir. 1983).  Further, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  A petitioner may not merely speculate about potential prejudice but must "affirmatively prove" that the result of the proceedings would have been different but for the deficient performance of trial counsel.

*See Strickland*, 466 U.S. at 693.  The undersigned will address each of Petitioner's claims of ineffective assistance using this standard.

      1.      Failure to properly investigate and challenge search warrant.

In Ground 1(a), Petitioner contends that both of his trial attorneys failed to properly investigate and challenge the validity of the search warrant that resulted in the seizure of the drugs and money presented against him at trial.  His Amended Petition asserts that, despite being acquitted of all other charges, his conviction on one count of possession with intent to distribute Xanax was "one count too many." (ECF No. 27 at 16-17).  He contends that, had his counsel properly investigated and challenged the search warrant at the outset, the evidence against him would have been suppressed and he would not have gone to trial.  (*Id.* at 17).  Petitioner maintains that "no reasonable trial strategy can forego the chance to win the case at the outset without the risk of a jury trial." (*Id.*) Petitioner further contends:

> Likewise, no "trial strategy" can justify trial counsel's failure to fully investigate the case and offer the evidence that proves the falsity of the search warrant affidavit.  Finally, no trial strategy can justify failing to present the issues to the trial court or preserve the issues for appeal.

(*Id.*)

Specifically, Petitioner contends that the search warrant was issued based upon three grounds:  (1) the anonymous phone calls; (2) alleged surveillance of Petitioner's home; and (3) that the residence was "known for high drug activity." (*Id.*)  Petitioner contends that "when examined, each of these grounds are either false, misleading, or not credible." (*Id.*)  He claims that Deputy Chellis's intentionally false and inconsistent representations about surveillance and controlled buys, for which he and Sheriff Wheeler could provide no specific details (and which Petitioner claims never happened), leaves

nothing but "uncorroborated and unreliable telephone calls from anonymous callers" that were "not enough to sustain the search warrant." (*Id*. at 18-19).

Petitioner further contends:

> Trial counsel's failure to question the former Sheriff about the non-existent controlled buys is inexcusable and the failure to fully investigate the case to learn the truth, as was so easily accomplished by habeas counsel, demonstrates ineffective assistance of counsel. * * * Trial counsel's failure to investigate compounded the issue by not providing a counterbalance to the State's at best sloppy investigation and response. The facts outlined above were ascertainable with even a cursory investigation by trial counsel for the Petitioner. Counsel's failure to delve into the circumstances of supposed surveillance or supposed drug buys relating to the Petitioner's house or to preserve the issue of the validity of the search warrant for appeal certainly establishes ineffective assistance of counsel.

(*Id*. at 19-20).

Respondent contends that Petitioner's claim of ineffective assistance of counsel with respect to challenging the search warrant is "belied by the record" and Petitioner is simply rehashing his discontent with the decision denying his motion to suppress. (ECF No. 32 at 41-42). Respondent's memorandum of law further asserts:

> Nothing in Petitioner's amended petition provides any specific contention that his attorney acted in a manner that was "objectively unreasonable" as required under the first *Strickland* prong. The record clearly demonstrates that Petitioner's trial counsel filed a motion to suppress the evidence seized as a result of the search warrant, that a pretrial hearing was held before the Summers County Circuit Court on January 30, 2009, and that his counsel elicited testimony and made arguments to the court in support of the motion. (ECF 7-2). Petitioner utterly fails to identify how his trial counsel who prosecuted the suppression hearing failed to raise or challenge each and every alleged problem with the obtaining or execution of the search warrant that Petitioner now identifies. Instead, his argument is simply a rehashing of the same baseless and unsupported argument that he has been making for more than ten years: everyone lied, and his attorney was unsuccessful at having the evidence obtained during the search warrant suppressed. This, in no way, even begins to demonstrate any unreasonable conduct on the part of his trial attorney, let alone conduct that is "objectively unreasonable."

(*Id.* at 42).  Thus, Respondent contends that there is no evidence to support a claim of ineffective assistance of counsel concerning Jason Parmer's representation of Petitioner.

Likewise, Respondent claims that Petitioner's ineffective assistance claim against Jason Grubb is equally meritless.  Respondent's memorandum asserts:

> While Mr. Grubb did indicate that the way Petitioner's previous counsel wrote and argued the motion to suppress was not how Mr. Grubb would have handled the issue, he went on to state that he did not attempt to re-litigate the issue because those issues "had been heard, [and] the rulings had been made." (Ex. 5, at 27-29).  He explained that he "felt this was a case we had to try.  We tried the case basically showing that there were inconsistencies.  It was part of the trial strategy." (Ex. 5, at 30).

(ECF No. 32 at 43).  Respondent contends that the state courts properly found that counsel's performance did not fall below an objective standard of reasonableness.  (*Id.*)

The circuit court's decision denying habeas corpus relief on this claim recognized that "it is clear that [Grubb] considered the inconsistencies underlying the execution of the search warrant and pursued an effective and cohesive trial strategy."  (ECF No. 7, Ex. 13 at 8).  The court found that Grubb's actions in choosing not to re-litigate the "settled issues, and to instead attack the inconsistencies as a trial strategy" was not "objectively unreasonable." (*Id.* at 8).  The SCAWV agreed and adopted and incorporated the circuit court's "well-reasoned" findings in its opinion.  (ECF No. 7, Ex. 17).  Respondent contends that Petitioner has offered nothing to demonstrate that these decisions by the state courts were contrary to or an unreasonable application of the deferential *Strickland* standard.

Petitioner's response to Respondent's motion spends a great deal of time arguing that there was a "comparatively voluminous amount" of evidence in his favor concerning unrelated misconduct by officers in the Summers County Sheriff's Department, which he contends his counsel should have gathered and presented at trial.  (ECF No. 34 at 2-6). He further contends:

> Counsel could have consulted with the prosecutor's office, the state police, sheriff's department, and the city police department concerning drug bust, drug arrest, or any other criminal activities the petitioner may have been involved in.

(*Id.* at 2).  He further contends that "[b]oth trial counsels knew Mr. Chellis was a fraud and a liar, yet they failed to get any negative information against him." (*Id.* at 3).

Petitioner further asserts that it was a "critical error" for either counsel not to call Sheriff Gary Wheeler as a witness at the suppression hearing or to later revisit the denial of the motion to suppress because Wheeler could have testified that there were no controlled buys or frequent surveillance to bolster the anonymous tips concerning drugs that were never found and, thus, there was not probable cause for the warrant. (*Id.* at 3). His response to Respondent's motion further states:

> Petitioner believes if first trial counsel would [have] subpoenaed Sheriff Gary Wheeler at the suppression hearing, this would have resulted in the Petitioner's case being dismissed.  * * *  Summers County officers [have] had a long history of misconduct and civil rights violations.  It is undisputable that this shows a systemic pattern of behavior.

(*Id.* at 4-5).  Petitioner further asserts that it would have been "beneficial" for Petitioner's counsel to learn of this information but, even with the assistance of an investigator (whom Petitioner contends was a former deputy sheriff), they failed to develop and present any of it to the court in the suppression hearing or at trial. (*Id.*)

The undersigned begins with a brief discussion of the standards for challenging a search warrant based upon allegedly false information in a warrant application.  In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that, where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement is necessary to the finding of

probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  The Fourth Amendment clearly provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ."  U.S. Const., Amend. IV.  There is a presumption that information contained in a search warrant application is true.  *Franks*, 438 U.S. at 170.  However, the Supreme Court has also made clear that "probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily."  *Id.* at 164-65.

The search warrant affidavit offered by Deputy Chellis represented that at least two anonymous calls were received on March 1, 2008, offering substantially similar information suggesting that a large shipment of illegal drugs was at Petitioner's home.  The affidavit further stated that the residence was "known for high drug activity" and that surveillance of the property had revealed a large amount of activity coming and going from the property.  (ECF No. 27 at 96).  In what amounted to a *Franks* hearing before the trial court, Petitioner, by counsel Jason Parmer, asserted that Chellis provided the information for the warrant with reckless disregard for the truth because he could not substantiate any recent surveillance or controlled buys at the property and did not otherwise attempt to corroborate the reliability of the anonymous callers, whose information proved to be inaccurate, as no large shipment of the specified drugs was found at the residence.  However, smaller amounts of other drugs were seized.

During that hearing, Chellis confirmed that they had no surveillance logs, and he could not specify when any surveillance or controlled buys had occurred.  Nonetheless, Chellis testified that he believed that the information contained in the warrant application itself was accurate.  The Circuit Court ultimately ruled that "the actions taken by Deputy

Chellis and the Sheriff's Department constituted independent verification that established the informants' reliability" and "there was probable cause for the issuance of the search warrant based upon Deputy Chellis's affidavit." (ECF No. 27 at 90-93). That determination was upheld by the SCAWV in Petitioner's direct appeal, which again challenged the legality of the search warrant. (ECF No. 7, Ex. 8).

As noted above, after Jason Grubb took over as Petitioner's counsel, he chose not to revisit the suppression motion and determined that the best strategy would be to attack the problems and inconsistencies with the warrant through interrogation and argument at trial, which he largely did through the testimony of Chellis. Although former Sheriff Gary Wheeler also testified at the trial, Grubb did not question him about the warrant application or any prior interactions with Petitioner.

In his initial state habeas proceedings, Petitioner asserted that his counsel ineffectively failed to adequately investigate and exploit the inconsistencies of the search warrant. The Circuit Court found that Grubb "considered the inconsistencies underlying the execution of the search warrant and pursued an effective and cohesive trial strategy" and that it was not "objectively unreasonable to decide not to relitigate settled issues and instead to attack the inconsistencies as trial strategy." (ECF No. 7, Ex. 13 at 7-8). Thus, the Circuit Court held that Petitioner had not demonstrated ineffective assistance of counsel by Grubb on that basis. (*Id.*) That decision was upheld on appeal. (ECF No. 7, Ex. 17).

With respect to whether Parmer or Grubb ineffectively challenged the validity of the search warrant, *Franks* and its progeny are instructive. As determined in these cases, when material that is allegedly false or recklessly offered is removed, if there remains sufficient content upon which probable cause may be found, then such alleged

inaccuracies are irrelevant and there is no Fourth Amendment violation. *Franks*, 438 U.S. at 171-72. Here, Petitioner focuses on the lack of evidence to demonstrate surveillance of his property and prior controlled buys that allegedly occurred there. At the outset, the search warrant affidavit did not even mention controlled buys. Therefore, in testing the information within the four corners of the warrant application, the issue of controlled buys is irrelevant.

Thus, even presuming that the later testimony by Chellis concerning controlled buys was false, the state courts found that there was probable cause based upon the information that was placed in the warrant affidavit, including the consistent information provided by the anonymous callers and the alleged surveillance of the property by Chellis and other Sheriff's Department officers. Although Parmer challenged Chellis's testimony based upon a lack of surveillance logs and Chellis's inability to provide specific dates when such surveillance allegedly occurred, Chellis was able to describe where such surveillance was performed and what could be seen from that area. Petitioner has not demonstrated what else Parmer could have done to attack the probable cause finding. The state courts found:

> Parmer investigated the case and identified potential issues regarding the search warrant. He prepared and filed a Motion to Suppress Seized Evidence. That motion was denied in the Court's Order Denying Motion to Suppress Seized Evidence.

(ECF No. 7, Ex. 13 at 7). Petitioner has not established that Parmer's conduct fell below an objective standard of reasonableness under the circumstances.

As to Grubb's performance, it is well-settled that matters of trial strategy are not subject to scrutiny under *Strickland*. Petitioner now claims that Grubb should have renewed the motion to suppress and called Sheriff Wheeler as a witness because he would

have testified that there were no controlled buys made at the property prior to the issuance of the search warrant. However, Petitioner has not demonstrated that such action would have resulted in the suppression of the evidence against him, as the magistrate found probable cause absent any mention of controlled buys in the warrant application and that decision was upheld by the Circuit Court when it denied the suppression motion.

Although Grubb also failed to question Wheeler about the search warrant and his prior history with Petitioner or the property during the trial, that tactical decision is a matter of trial strategy that is generally not second-guessed in the deferential review under *Strickland* and AEDPA. Thus, the state courts' findings that Petitioner did not receive ineffective assistance of counsel by Grubb's failure to re-litigate the suppression motion, even considering Wheeler's omnibus hearing testimony that there were no controlled buys at Petitioner's residence before the search warrant was issued, is not an unreasonable application of *Strickland*.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the state courts' decisions were contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground 1(a) of Petitioner's Amended Petition.

        2.      Failure to properly defend Xanax charge.

In Ground 1(b) of his petition, Petitioner claims that Jason Grubb provided ineffective assistance of counsel during trial by failing to properly defend against the only

charge on which Petitioner was convicted; that is, possession with intent to distribute Xanax. Petitioner's claim largely appears to be grounded in Grubb's failure to obtain and admit at trial a copy of Stephanie Ratliff's Xanax prescription to prove that the drugs were hers. At the omnibus hearing, Grubb testified that it took a while to track down Ratliff and, although she testified that the drugs were hers, she allegedly could not remember the pharmacy where the prescription was filled, so Grubb was unable to obtain a copy of the prescription. (ECF No. 31, Ex. 5 at 38).[2] Petitioner, however, contends that Grubb's credibility is called into doubt by his own fraudulent conduct and conviction for tax evasion. (ECF No. 27 at 21).

Respondent concedes that Grubb's convictions demonstrate fraudulent conduct, but contends that fact, standing alone, does not demonstrate that his testimony at the omnibus hearing testimony was in any way inaccurate. Grubb testified:

> It's my recollection and, you know, the best I can do, is that [S.R.] didn't remember where she got it filled. She was not extremely helpful to our case. It took us a while to find her, a[ ] while to get her subpoenaed, a[ ] while to get her in. But once we did, she was very helpful. But she didn't have the prescription, couldn't remember where she got it filled, to the best of my recollection. Now that may not be completely accurate. That's just my recollection here today, you know, five years later. (Ex. 5, at 38).

(ECF No. 32 at 45). Ratliff's testimony was consistent with her statements to Grubb that she did not recall where she got the prescription filled. (ECF No. 31, Ex. 5, at 38-39). Grubb also gave his professional opinion that the actual prescription did not matter, because "[i]t was already proven that it wasn't his prescription. It was her prescription. There was no doubt about that." (*Id.* at 38). Moreover, he stated that the real problem

---

[2] The undersigned notes, however, that Ratliff's trial testimony suggests that Ratliff did know the name of the prescribing doctor and pharmacy by the time of trial. (ECF No. 35, Ex. 2 at 142-43).

with the evidence was "when [Petitioner took the stand and] said he got it out of her purse and shared it . . . ." (*Id.*)

In denying Petitioner's first habeas petition, the circuit court noted that Petitioner's argument at trial was that Ratliff "was in possession of the Xanax, because it was her prescription." (ECF No. 7, Ex. 13 at 8). However, the court also noted that the evidence at trial demonstrated that the "Xanax was found in a drawer in the bedroom and not in [S.R.'s] purse, the label had been removed, and she had neither removed the medication from her purse, nor removed the label." (*Id.* at 8). The court further emphasized that Petitioner testified that he took the medication to "share between himself and a friend," but did not intend to sell it. (*Id.*) Respondent's brief further asserts:

> The circuit court concluded that Mr. Grubb's actions with respect to the prescription were not "deficient representation under an objective standard of reasonableness" under the *Strickland* standard. (ECF 7-13, at 9). The circuit court further noted that the actual prescription itself was not critical, as Petitioner presented evidence demonstrating that the Xanax was, in fact, prescribed to S.R. (ECF 7-13, at 9). It was Petitioner's own testimony that completely destroyed any benefit such evidence may have had, as it clearly revealed Petitioner took possession of the prescription, and removed the label himself. (ECF 7-13, at 8-9). Thus, even if the actions of Mr. Grubb were objectively unreasonable, Petitioner could not demonstrate that he was at all prejudiced by the failure to secure the prescription, as required by the second *Strickland* prong. (ECF 7-13, at 9).

(ECF No. 32 at 45-46).

Petitioner's response brief contends that "[t]he Xanax charge should have been downgraded to simple possession" because he claims it was a "simple party" "with only adults" where he took drugs with others but had no criminal intent to sell them. (*Id.* at 10).

At trial, Stephanie Ratliff testified that the bottle of Xanax was hers. However, she confirmed that she did not remove the pills from her purse or remove the label. While

producing a copy of the prescription would have confirmed Ratliff's testimony that the pills were prescribed to her, it would not have made a difference in the outcome of Petitioner's trial, because it was his own testimony that he took the pills and shared them with friends that supported the finding of guilt on the possession with intent to distribute charge. Thus, the state courts found that Petitioner could not satisfy the *Strickland* prejudice prong. (ECF No. 7, Ex. 13 at 10; Ex. 17 at 3).

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the state courts' decisions were contrary to or any unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground 1(b) of Petitioner's Amended Petition.

3.    Failure to protect against juror bias.

In Ground 1(c) of his Amended Petition, Petitioner alleges that Grubb provided ineffective assistance because he failed to investigate and challenge Andy Ward's service as a juror at Petitioner's trial. Petitioner's initial petition contended that Ward may have been someone with whom he previously socialized and did drugs. (ECF No. 1 at 11). Petitioner further contends that Ward failed to disclose those facts during voir dire and that Grubb failed to properly address the issue with the court during the trial or thereafter. (*Id.*) His Amended Petition maintains this claim and asserts as follows:

> When there is a potential for a juror to have served on a jury with a pre-conceived dislike for the criminal defendant, that issue must be explored. Here, the only way to do that was through the testimony of the juror to confirm the concerns. The inconvenience to the juror in testifying pales in

comparison to the potential violation of due process and the life sentence imposed on Petitioner.

(ECF No. 27 at 22).

During Petitioner's omnibus evidentiary hearing, however, Petitioner failed to present any actual evidence to demonstrate that Ward was the individual he used to know. Rather, he relied solely on a letter written by a friend suggesting, on the one hand, that the man <u>might</u> be the person they used to do drugs with, and, on the other hand, stating that he doesn't look like the same guy. (ECF No. 7, Ex. 13 at 9). Petitioner further argues that the habeas court denied him the ability to subpoena Ward to testify at the omnibus proceeding to further explore the issue. Thus, Petitioner claims that it was error by the court not to permit him to inquire of Ward and to simply rely on Grubb's questionable testimony. (*Id.*)

Respondent asserts that "[t]his claim is entirely based on speculation that has absolutely no support from the record." (ECF No. 31 at 47). During the omnibus hearing, Respondent's counsel further clarified that there were two individuals named Andy Ward residing in Summers County. (ECF No. 31, Ex. 5 at 33-34).

At the omnibus hearing, Grubb first testified that he could not recall any issues with a particular juror and that, if he had been made aware that a prospective juror had a "personal animus" toward Petitioner, he would have "moved to strike for cause . . . ." (*Id.* at 34). However, he later stated that, after Cassell brought it to his attention, "it seems that was an issue that was raised about one of them, whether or not Mr. Galloway knew them or not." (*Id.* at 39). However, there is nothing in the trial record indicating that the issue was addressed before the court. Grubb also testified that Petitioner was "very involved in his case and directed a lot of" the trial strategy. (*Id.* at 39). Grubb ultimately

agreed that, from what he could recall, anything that Petitioner raised to him about this issue was not "significant enough to alert [him] to try to do individual voir dire or look further into that matter." (*Id*.)

In its order denying Petitioner's first petition for habeas relief, the circuit court found as follows on this claim:

> Petitioner asserts that, during voir dire, he told his counsel that he might know Juror Ward. His trial counsel, Mr. Grubb denied that the Petitioner told him he might know Juror Ward. In support of the Petitioner's argument, he has submitted a letter from his friend, Dewey Mann, stating that Juror Ward was the same Mr. Ward with whom they had previously engaged in drug activity. In this same letter, Mr. Mann recalls a conversation where the Petitioner told him that he thought it was a different Mr. Ward because Juror Ward appeared different from the man he remembered. At the omnibus hearing, the Prosecutor represented that there are two men in the jurisdiction with the name Andy Ward.

(ECF No. 7, Ex. 13 at 9). The circuit court further concluded that Petitioner could not demonstrate that he "was sure, or even confident of," whether Ward was the man he knew and, "[e]ven based on the representations of his companion, Mr. Mann, the Petitioner believed Juror Ward to be a different person than the Mr. Ward with whom he engaged in drug activity." (*Id*. at 10). The circuit court ultimately concluded that Petitioner failed to demonstrate that he had told his counsel that he knew the juror, and that he failed to establish that Grubb's performance in this respect was objectively unreasonable under the first *Strickland* prong. (*Id*.) The court added that Petitioner's counsel was "under no duty to make further inquiry . . . or strike him for cause where he did not know there was a potential relationship between the Petitioner and the Juror." (*Id*.) That decision was upheld on appeal and adopted by reference by the SCAWV. (ECF No. 7, Ex. 17).

While the evidence is unclear as to whether and when Petitioner may have advised Grubb of a potential issue with juror Ward, Petitioner has come forward with no actual

evidence to demonstrate that Ward was a biased juror, and therefore he cannot meet the prejudice prong of *Strickland*. Petitioner complains that the circuit court erred in denying him the ability to subpoena Ward to testify at the omnibus hearing. However, that was not the only method of developing evidence to support this claim. Petitioner has provided no evidence to demonstrate that he, his habeas counsel, or anyone else on his behalf had diligently investigated the issue of whether Ward was the person with whom he had a prior relationship, and he has offered no affidavits or other documentary evidence, other than the equivocal letter from Dewey Mann, to demonstrate or support a finding that Ward was actually biased against Petitioner. Consequently, his claim is speculative, at best, and is insufficient to establish prejudice to support an ineffective assistance of counsel claim.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the state court decisions denying him habeas corpus relief on this claim of ineffective assistance of counsel were contrary to, or an unreasonable application of, federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground 1(c) of Petitioner's Amended Petition.

4.    Failure to prevent prosecutor from shifting burden of proof.

In Ground 1(d) of his Amended Petition, Petitioner asserts that, during his cross-examination by the prosecutor, his counsel impermissibly allowed the prosecutor to shift to him the burden of proof with respect to the source of the money found in his bedroom. (ECF No. 27 at 23). Respondent, on the other hand, contends that, once Petitioner took the stand and testified that the money came from sources other than the sale of drugs, he

opened the door to be cross-examined and impeached concerning the sources of those

funds.  (ECF No. 32 at 49).   Respondent asserts that Petitioner's argument "conflates

impeachment evidence with 'shifting the burden of proof'" and further contends that "the

State's questioning of Petitioner in this respect was entirely appropriate to impeach 'the

self-serving, and unsupported testimony offered by Petitioner.'"  (ECF No. 32 at 49-50).

> The circuit court agreed, finding as follows:

> In this case, the Petitioner waived his right as a criminal Defendant to remain silent. He took the stand and testified on direct examination that the currency seized during the search was not received from the sale of drugs, but rather from his earnings, gambling wins, and tax return.  This currency was the basis for the possession with intent to distribute charge. On cross examination, the Prosecution asked the Defendant to produce pay stubs and his tax return.  The Prosecution further inquired about the size of the bills seized from the Petitioner, and initiated a line of questioning to suggest that the bills were too large to be earned during gambling.

> This line of questioning is directly related to Petitioner's testimony on direct examination. When the Petitioner testified that the seized money was not earned through drug sales but rather through legitimate means, he opened the door to questions to impeach the Defendant's testimony.

> The only remaining argument is that counsel was ineffective by asking those questions, and thereby opening the door to the subjects on cross examination.  The Court finds that Petitioner cannot meet its burden under either prong of *Strickland*.   First, counsel's performance was not deficient under an objective standard of reasonableness because it is a sound trial strategy to counter the Prosecution's assertion that the money in the Defendant's possession was earned through drug sales. Second, there is not a reasonable probability that the outcome of the trial would be different because without the Petitioner's testimony, [] there would be no way to counter the Prosecution's assertion that money was actually the product of drug sales.

(ECF No. 7, Ex. 13 at 10-11).  The SCAWV adopted by reference and affirmed the circuit

court's decision on appeal. (ECF No. 7, Ex. 17).

The undersigned agrees that Petitioner has failed to demonstrate that Grubb's

conduct in this regard fell below an objective standard of reasonableness, or that he was

prejudiced as a result thereof. Thus, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the state courts' decisions were contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground 1(d) of Petitioner's Amended Petition.

5.    Mis-advice concerning effect of Habitual Criminal Act.[3]

In Ground 1(e) of his Amended Petition, Petitioner asserts that Grubb failed to properly inform him about the risk of a recidivist life sentence based upon his criminal history. Specifically, based upon a review of his state court habeas corpus filings and the Amended Petition, Petitioner appears to contend that Grubb seemed uncertain about the application of his prior 2004 conviction for voluntary manslaughter and whether Petitioner would have two or three "strikes" against him. (ECF No. 27 at 24). His Amended Petition states:

> Petitioner respectfully asserts that that this Court must impose upon defense counsel the obligation to provide definitive advice about black letter law issues. No reasonable attorney would believe that Petitioner was only facing a second strike enhancement. Allowing trial counsel to inexplicably and mistakenly advise Petitioner that a two strike enhancement was even a possibility would fundamentally undermine the requirement of effective assistance of counsel. Defense attorneys have an absolute obligation to "get it right" about a client's potential exposure. The failure to do so in this case is gross ineffective assistance of counsel that prejudiced Petitioner because he had been offered a plea in this matter.

---

[3] At the time of Petitioner's criminal trial and subsequent recidivist trial, West Virginia Code § 61-11-18(c) (2000), provided that, when any person has been "twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." Thus, once Petitioner was found to have met the criteria set forth in West Virginia Code § 61-11-18 (2000), the circuit court had a mandatory obligation to impose a life sentence for his current conviction.

(*Id.*)

Respondent asserts that Petitioner's confusing argument appears to contend that Grubb advised him that he would only be subject to a second recidivist sentencing enhancement, which does not carry a potential life sentence, but also stated that he would face a "second or third strike," with the "third strike" requiring the potential life recidivist enhancement. (ECF No. 27 at 24; ECF No. 32 at 50). The record, however, belies Petitioner's contentions. During the omnibus evidentiary hearing, Grubb testified that:

> What I'd told him was that he needed to take a plea because this would be— well, my recollection is, I said, you need to plea this because this is your third strike. Now what I don't recall is whether we had a plea offer or if the plea offer was to be his second strike instead of his third. . . . I do recall discussing that with him, the possibility if he were convicted that he would be gone for a long time.

(ECF No. 31, Ex. 5, at 41-42). Grubb further testified that he clearly advised Petitioner that a conviction in the case "would result in either a second or third recidivist," and that he recalled telling Petitioner that "the prosecutorial staff . . . not only were . . . interested in convicting him, they were more interested in the recidivism than they were on the underlying conviction." (*Id.* at 42-43). Grubb further stated that it was his "complete recollection" that Petitioner understood the risk of a potential life recidivist. (*Id.* at 43).

Petitioner elected not to testify at the omnibus hearing. Nonetheless, he now asserts that, had he known that he was exposed to a third recidivist life sentence, he would have considered taking a plea. However, he has presented absolutely no information about any plea offer that he would have accepted, or the particulars of any plea offer that had been made to him – particularly whether such plea offer would have negotiated away any recidivist sentence.

The circuit court's order found Petitioner's argument that "Mr. Grubb was confused about how the enhancement applied to Petitioner's case, and perhaps that would have influenced Petitioner's decision to take a plea" was without merit. (ECF No. 7, Ex. 13 at 12). Its order states:

> Based upon the Court's review of the record, counsel demonstrated an adequate understanding of the enhancement statute. At most, the record demonstrates that Mr. Grubb was a bit mixed up, but in no way do his statements extend to a showing that Mr. Grubb was unclear on the statute. Ultimately, Mr. Grubb had no control over the Petitioner's prior convictions, and his attempt to defeat the recidivism charge argued on February 23, 2010, was nothing more than zealously advocating for his client. Because his argument did not carry the day does not create an inference that he misinformed his client, it is merely proof that the law was not on his client's side.

(*Id.*)

As noted by Respondent, while Grubb argued that Petitioner's 2004 no contest plea to voluntary manslaughter should not count toward his recidivist sentence, the court found that Grubb demonstrated "an adequate understanding of the enhancement statute," and that his arguments with respect to the application of the recidivist statute were "nothing more than zealously advocating for his client." (ECF No. 32 at 51, citing ECF No. 7, Ex. 13 at 12). Accordingly, the circuit court found that Grubb had not provided objectively unreasonable assistance and denied Petitioner's claim. (ECF No. 7, Ex. 13 at 12). The SCAWV affirmed the circuit court's decision. (ECF No. 7, Ex. 17).

The record supports a finding that Petitioner was aware that he faced a possible life sentence if he was convicted. (*See* ECF No. 31, Ex. 5, at 43 (Mr. Grubb testifying that it was his "complete recollection . . . that [Petitioner] understood that" "he faced a potential life sentence if he was convicted of the delivery charges")). Petitioner has not

rebutted this position, other than to offer conclusory and self-serving statements that are unsupported by any evidence.

Moreover, even if this Court were to find that Grubb's advice to Petitioner with respect to the possible life recidivist sentence was objectively unreasonable, there is nothing to indicate that the result of the proceeding would have been any different.  At best, he makes a speculative, unsupported assertion that he may have taken an unidentified plea offer.  That is insufficient to establish the requisite prejudice to support a Sixth Amendment violation based upon ineffective assistance of counsel.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the state court decisions denying him habeas corpus relief on this claim of ineffective assistance of counsel were either contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground 1(e) of Petitioner's Amended Petition.

6.    Failure to fully litigate severance issue.

In Ground 1(f) of his Amended Petition, Petitioner asserts that his counsel failed to properly litigate his motion for severance.  During the pre-trial phase of Petitioner's criminal proceedings, his counsel moved to sever the drug charges from all other charges in his indictment.  However, the circuit court ultimately granted the motion in part, severing only the intimidation/retaliation on a public official count and leaving the battery and obstruction counts to be tried in conjunction with the drug counts.  Petitioner's Amended Petition added this new claim of ineffective assistance of counsel asserting that this decision allowed the jury to cumulate evidence concerning his charges.

(ECF No. 27 at 25-26). His Amended Petition further asserts that he was "forced to testify" to address these other charges when he "would not have testified concerning the two counts of possession with intent to deliver." (*Id.* at 25). He contends that "[t]he prejudice is extreme as evidenced by Respondent's reliance on Petitioner's trial testimony to support the possession with intent to distribute conviction." (*Id.* at 25-26). He also asserts that his testimony opened the door for the "burden-shifting" inquiries about his source of funds. (*Id.* at 26). Thus, he claims that his counsel's failure to pursue further review of the denial of the severance constitutes ineffective assistance. (*Id.*)

Respondent contends that Petitioner failed to fully exhaust this claim in the state courts and that it is now procedurally defaulted and barred from review herein. (ECF No. 32 at 19). As noted in the standards of review above, a petitioner must fully and fairly present, in the state courts, the same federal claim on which he seeks relief in the federal court and the failure to do so generally renders a claim unexhausted. Moreover, a state procedural rule clearly operates to bar further review of an unexhausted claim, the federal court is also barred from consideration of that claim under the procedural default doctrine, unless the petitioner can show cause and prejudice to overcome the default or a complete miscarriage of justice. Such is the case with Petitioner's ineffective assistance claim concerning the severance motion.

As noted by Respondent, it appears that the first time that Petitioner raised an issue concerning his counsel's performance with respect to the severance motion was in his reply brief in his first state habeas corpus proceeding, and then he failed to raise it before the appellate court. Moreover, it does not appear that the state courts rendered any substantive finding concerning that claim in those proceedings. Respondent further asserts:

> Petitioner does not identify any reason why he was unable to present that claim, nor does he claim that he requested that any of his attorneys pursue such a claim on appeal. The underlying claims of error regarding the severance issue were decided prior to trial. While Petitioner certainly pursued his claims with respect to the circuit court's denial of his motion to suppress, he made no mention of the severance claim until years after his conviction.

(ECF No. 32 at 22).  Moreover, considering the state courts' application of *res judicata* to the bulk of Petitioner's claims raised in his second state habeas corpus proceedings in accordance with the independent and adequate procedural requirements of the *Losh* checklist, as addressed in his first state habeas proceedings, it is extremely likely that Petitioner is procedurally barred from returning to the state courts for a substantive review of his ineffective assistance claim concerning the severance issue.  Nor has Petitioner sufficiently established cause and actual prejudice or that this decision resulted in a miscarriage of justice in order to overcome his default of this claim.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the claim in Ground 1(f) of Petitioner's Amended Petition should be summarily dismissed as being procedurally defaulted.

### B.    Ineffective assistance of habeas counsel claims.

In Ground Two of his Amended Petition, Petitioner contends that his habeas counsel, Paul Cassell, provided ineffective assistance by failing to properly challenge the allegedly inadequate search warrant and failing to discover and raise the issue of the missing pages in his appellate record.  (ECF No. 27 at 26-29).  However, as noted by Respondent's motion, claims concerning ineffective assistance of habeas counsel are not cognizable in federal habeas corpus. *See* 28 U.S.C. § 2254(i); *see also Coleman v. Thompson*, 501 U.S. 722 (1991); *Miller v. Sallaz*, No. 5:20-cv-00661, 2022 WL 4103848, at *5 (S.D. W. Va. July 21, 2022), *report and recommendation adopted*, 2022 WL

4084226 (S.D. W. Va. Sept. 6, 2022), *appeal dismissed*, No. 22-7180, 2023 WL 4181320 (4th Cir. June 26, 2023).  Consequently, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's claims of ineffective assistance by his habeas counsel are not cognizable for review in this federal habeas proceeding and should be summarily dismissed.

### C.    Disproportionate sentence claim.

In Ground Three of his Amended Petition, Petitioner asserts that his recidivist life sentence is disproportionate to the crime he committed.  His Amended Petition asserts:

> Respondent predictable [sic] argues that this Court should ignore the actual crime for which Petitioner received the life sentence, a low level, non-violent possession with intent to deliver charge, and should instead focus on his prior convictions.  This argument skips an important step, this Court has repeatedly advised that the primary focus of a proportionality assessment should be on the final offense.

(ECF No. 27 at 30).  Petitioner then appears to quote from West Virginia state law concerning the application of recidivist sentences to assert that increased scrutiny is required with respect to the final offense to which the recidivist sentence will apply.  (*Id.*, quoting *Wanstreet v. Bordenkircher*, 276 S.E.2d 205, 212 (1981)) (recognizing proportionality guarantee under Article III, § 5 of West Virginia Constitution that is not expressly stated in the Eighth Amendment).  In essence, Petitioner assets that, notwithstanding his other criminal history, a life sentence is far too harsh and "facially disproportionate" to his non-violent drug possession charge.  (*Id.*)

Respondent's motion documents assert that this claim as stated in Petitioner's Amended Petition raises no federal questions, and Petitioner has never raised this claim under federal law in any of his state proceedings.  (ECF No. 32 at 30).  Moreover, Respondent contends that this ground for relief is also procedurally defaulted because

Petitioner did not fully and fairly raise and exhaust it as a federal constitutional claim in his state court proceedings and would be procedurally barred from doing so now in accordance with *Losh* and principles of *res judicata*. (ECF No. 32 at 18). Respondent's memorandum of law states:

> Petitioner's claim of disproportionate sentence . . . is clearly a challenge to the propriety of West Virginia's recidivist statute found in West Virginia Code § 61-11-19. Nevertheless, Petitioner did raise disproportionate sentence as a ground for relief in his amended petition for habeas corpus relief filed in the circuit court, and re-raised the claim again in the subsequent appeal of the circuit court's denial of his state habeas petition. (ECF 7-14). In presenting this claim, first to the circuit court, Petitioner's argument was based entirely upon West Virginia state law precedent dealing specifically with interpreting West Virginia Code § 61-11-19. Similarly, in Petitioner's subsequent appeal to the [SCAWV], he again failed to raise his claim under any federal precedent or law, and again relied on West Virginia state law precedent. (ECF 7-14, at 27-28).

(*Id.*)

As further noted by Respondent, "Petitioner's issues with respect to his sentence were readily ascertainable at the time he filed his direct appeal." (*Id.* at 23). As it appears, Petitioner has no other available state remedies through which he may exhaust a federal constitutional claim with respect to Ground Three due to the *res judicata* rulings in his second state habeas proceedings. The undersigned agrees with Respondent that "[t]his is not because Petitioner has not been afforded an adequate opportunity to do so; he simply chose to focus on other issues . . . ." (*Id.*) Nor has Petitioner sufficiently established cause and actual prejudice or a miscarriage of justice to overcome his procedural default of this claim. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the claim in Ground Three of Petitioner's Amended Petition should be summarily dismissed as being procedurally defaulted and for failure to state a cognizable federal constitutional claim.

**D.     Cumulative error claim.**

In Ground Four of his Amended Petition, Petitioner contends that the cumulative effect of multiple errors as identified in his other grounds for relief violated his constitutional rights. He contends that there were "fatal flaws with the search warrant, failure to develop evidence and argument, incorrect legal advice, as well as the proportionality issues . . . ." (ECF No. 27 at 31). He further states, "cumulative error did occur in this case due to counsel's fundamental failure to provide effective representation across a broad spectrum of areas. Clearly, Petitioner was not protected from all the false testimony." (*Id.*)

Respondent, on the other hand, contends that cumulative error claims are not cognizable in federal habeas corpus. (ECF No. 32 at 28). Lacking any relevant Supreme Court precedent, Respondent's memorandum of law relies almost exclusively on authority from the United States Court of Appeals for the Sixth Circuit:

> "[W]e have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (citing *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). The Sixth Circuit in *Moore* further recognized that, in order to provide a basis for federal habeas relief, there must be some precedent established by the United States Supreme Court, and noted the lack of any such precedent allowing a petitioner to aggregate any number of errors into one of cumulative error in support of habeas relief. *Id.*; *see also Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) ("Post-AEDPA, [cumulative error] is not cognizable [in federal habeas corpus]." (citing *Moore*, 425 F.3d at 256)).

(ECF No. 32 at 28). Respondent further contends that, while the Fourth Circuit has not expressly adopted this same position, it has certainly implied it. (*Id.*, citing *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998) (finding that various claims of ineffective assistance of counsel should be addressed individually, not cumulatively) and *Arnold v.*

*Evatt*, 113 F.3d 1352, 1364 (4th Cir. 1997) (rejecting petitioner's request to review trial court errors cumulatively rather than individually)); *but see United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (internal quotations and citations omitted) (Recognizing that "the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error" where the errors "so fatally infect the trial that they violated the trial's fundamental fairness." (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)).

However, "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Fisher*, 163 F.3d at 852 n.9.  Thus, for cumulative error to apply, a court must first conclude that constitutional errors did in fact occur, and while harmless individually, the aggregate effect of the errors was to effectuate grave constitutional harm.  *Id.*  As the undersigned has concluded that the state courts' denial of all of Petitioner's individual claims was not inappropriate under the standards governing § 2254 petitions, there are no constitutional errors on which he could base a claim of cumulative error.  Therefore, the undersigned **FINDS** that Petitioner's claim of cumulative error cannot succeed as a matter of law.

### E.    Stand-alone Fourth Amendment claim.

Although not pled in his Amended Petition, Petitioner's response to Respondent's Motion to Dismiss and Motion for Summary Judgment asserts that he still wishes to pursue a substantive Fourth Amendment claim grounded in the alleged invalid search and seizure of evidence from his residence.  Despite his contentions otherwise, Petitioner had a full and fair opportunity to litigate his claims concerning the search warrant on multiple occasions in the state courts, through his suppression motion and hearing, at

trial, on direct appeal, and in his initial state habeas proceedings. Thus, as noted by Respondent (ECF No. 32 at 34-36) and based upon the clearly established precedent in *Stone v. Powell*, 428 U.S. 465, 494 (1976), the undersigned proposes that the presiding District Judge **FIND** that Petitioner is barred from again pursuing relief on a substantive Fourth Amendment claim in these federal habeas corpus proceedings under § 2254.

## IV.    RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss and Motion for Summary Judgment (ECF No. 31).[4] **DENY** Petitioner's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 27), and **DISMISS** this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

---

[4] To the extent that Petitioner's Response to Respondent's Motion to Dismiss and Motion for Summary Judgment requests summary judgment on his own behalf (ECF No. 34 at 11), it is respectfully **RECOMMENDED** that his request be **DENIED**. The presiding District Judge should further find that there is no valid basis for an evidentiary hearing or appointment of counsel, as further requested therein.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Volk.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to Petitioner, and to transmit a copy to counsel of record.

August 30, 2023

Dwane L. Tinsley
United States Magistrate Judge